UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRYNA MCQUEEN,<br><br>        Plaintiff,<br><br>v.<br><br>NYE COUNTY SHERIFF'S OFFICE, et al.,<br><br>        Defendants. | Case No. 2:15-cv-00905-APG-VCF<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 28) |

        Plaintiff Patryna McQueen sues defendants Nye County Sheriff Anthony L. Demeo, Sergeant Daniel Thomassian, Detective James Scott, and Detective Michael Eiserloffel under 28 U.S.C. § 1983 for violations of her Fourth and Eighth Amendment rights. She claims that Sheriff Demeo advanced unconstitutional policies concerning the medical care of Nye County Detention Center (NCDC) inmates. She alleges that Sergeant Thomassian and Detectives Eiserloffel and Scott unconstitutionally searched her home and seized her property.[1]

        The defendants move for summary judgment on all claims. McQueen opposes, arguing that the defendants failed to comply with the initial disclosure requirements under Federal Rule of Civil Procedure 26 and should therefore be precluded from relying on some of the evidence cited in their motion. I deny the summary judgment motion without prejudice as to McQueen's medical care claims, and reopen discovery for the limited purposes of ordering Demeo to produce written policies pertaining to the Nye County Sheriff Office's (NCSO) medical care of detainees and allowing some follow-up discovery. I grant judgment in favor of Thomassian, Scott, and Eiserloffel on McQueen's search and seizure claims.

---

[1] All other claims in McQueen's complaint were dismissed on August 10, 2015. ECF No. 4.

1  I.      **BACKGROUND**

2       McQueen initially complained of three searches that took place on May 20 and May 29,
3  2013, and March 11, 2015. In her response to the summary judgment motion, McQueen
4  concedes that the search on May 29 was constitutional, so I focus only on the other two.[2]

5       **A.      May 20, 2013 Search and Subsequent Detention**

6       On May 20, 2013, Sgt. Thomassian applied for a search warrant "because he had probable
7  cause that certain property—specifically, unknown quantities of narcotics, stolen property, [and]
8  any and all firearms—was located" at 2281 N. Morales Lane.[3] The property contained four
9  separate units. Unit A, where McQueen lived, was a white, two-story, family residence. Unit B
10 was a separate residence rented to another individual. Unit C was a storage unit and travel trailer,
11 where Irvin (McQueen's separated husband) lived.[4] There was one more dwelling with no unit
12 number.[5] McQueen alleges that Irvin was the person under suspicion of crimes related to the
13 warrant, not her. She testified at her deposition that Irvin did not have access to Unit A.[6] The
14 search warrant allowed officers to search "the property located at 2281 North Morales Lane . . .
15 described as a white two story family residence that is mostly surrounded by a brick fence. There
16 is a trailer and a guest house to the rear of the property. . . . There are several vehicles and other
17 sheds on the property where drugs, weapons, and stolen property could be concealed."[7]

18      Based on that description of the property, the officers searched McQueen's and Irvin's
19 units, despite McQueen telling the officers that Irvin did not have access to Unit A and did not
20 live there. She claims that Sgt. Thomassian failed to investigate Irvin's actual address and
21 therefore subjected her to an illegal search when she was not a suspect for any of her husband's

---

[2] *See* ECF No. 33 at 19.

[3] ECF No. 28 at 4.

[4] Because Irvin and the plaintiff share the same last name, I will refer to Irvin by his first name. No disrespect is intended by doing so.

[5] *See* ECF No. 28 at 36 (McQueen's deposition).

[6] *Id.* at 37.

[7] *Id.* at 80 (May 20, 2013 search warrant).

illegal activities.   McQueen argues that Sgt. Thomassian did not have probable cause to search Unit A and that he failed to identify in the search warrant which specific unit was subject to search.[8]

McQueen has a cardiac condition that requires nitroglycerin pills to maintain blood flood to her heart.[9]  The condition and reactions to her medication can require additional medical care.[10] She began experiencing severe chest pains and shortness of breath while the officers were searching her house pursuant to the May 20, 2013 warrant.[11]  EMTs evaluated her at the house and told the officers conducting the search that she should go to the hospital.  An unidentified officer responded that she had to stay because they had additional questions.[12]  McQueen was then arrested and detained for a few days at NCDC.[13]  In custody she continued to feel ill, and vomited multiple times.[14]  The officers gave her access to her nitroglycerin pills upon request. McQueen alleges that she "requested and begged" the officers to let her see a doctor, but the requests were ignored.[15]  McQueen alleges that Sheriff Demeo advanced unconstitutional policies governing the medical care of detainees, which violated her constitutional rights.

**B.      March 11, 2015 Search**

On March 11, 2015, McQueen was again subject to a search warrant due to another person's suspected crimes.  Her friend, Diane Lake, was suspected of running a fraudulent check scheme.[16]  While investigating Lake and conducting search warrants of related properties, Detective Eiserloffel "learned that Lake was keeping some of her belongings and potentially

---

[8] ECF No. 5 at 5–7.
[9] *Id.* at 10.
[10] ECF No. 28 at 49.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 43.
[14] *Id.*; ECF No. 5 at 10.
[15] ECF No. 5 at 11.
[16] ECF No. 28 at 135 (Eiserloffel's declaration).

stolen property" at McQueen's residence.[17]  He obtained a warrant to search McQueen's home, which allowed him to seize a variety of documents not identifiable as belonging to McQueen, as well as all printing materials, computers, laptops, tablets, and hard drives regardless of who they belonged to.[18]  The officers seized McQueen's and her children's personal computers and some prescription medications not belonging to McQueen or Lake.[19]  As of March 30, 2017, when McQueen was deposed, the officers had not returned her property and had not charged McQueen with any related crime.[20]

## II. DISCUSSION

### A. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, discovery responses, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]  Material facts are those that may affect the outcome of the case.[22]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[23]  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."[24]  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."[25]

In determining summary judgment, courts apply a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come

---

[17] *Id.* at 135–36.

[18] *Id.* at 138–39.

[19] *Id.* at 140 (seized item list); 47 (McQueen's deposition).

[20] *Id.* at 48.

[21] Fed. R. Civ. P. 56(a).

[22] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *See id.*

[24] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[26] In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[27] If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.[28]

      If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.[29] To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[30] In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.[31] Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[32]

      At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.[33] The evidence of the non-

---

[26] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

[27] See *Celotex*, 477 U.S. at 323–24.

[28] See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

[29] See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[30] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

[31] See *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[32] See *Celotex*, 477 U.S. at 324.

[33] See *Anderson*, 477 U.S. at 249.

movant is "to be believed, and all justifiable inferences are to be drawn in his favor."[34] But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.[35]

**B.     Federal Rules of Civil Procedure 26 and 37**

Rule 26(a)(1)(A)(i) requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Rule 26(a)(1)(A)(ii) requires disclosure of "a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."

If a party fails to disclose information required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure is substantially justified or is harmless." FRCP 37(c)(1). I have broad discretion to issue sanctions under Rule 37(c)(1).[36]

**C.     Analysis**

**1.     Medical Care Claim and Rule 26**

The only defendant named in McQueen's medical care claim is Sheriff Demeo. Both sides agree that he had no personal participation in her care while she was briefly detained in May 2013. Demeo treats this as a deliberate indifference claim against a supervisor for "advanc[ing] or manag[ing] a policy that instructs its adherents to violate constitutional rights."[37] McQueen alleges that the lack of medical care resulted from a policy of not employing medical staff at the detention center.

---

[34] *Id*. at 255.

[35] *See id.* at 249–50.

[36] *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 269 F.3d 1101, 1106 (9th Cir. 2001).

[37] ECF No. 28 at 23 (citing *OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012)).

Demeo relies on his own declaration to demonstrate that NCDC had policies in place to address the medical needs of detainees. Demeo states that "it was the policy of NCSO to ensure that an inmate's access to adequate medical services was not delayed or denied."[38] He describes the policies to include the provision of "emergency medical and dental care" for inmates with acute illnesses or unexpected health issues. NCDC would transport the inmate to a local hospital for treatment if it could not be deferred to the next scheduled sick call. He states there were also policies in place to address the medical needs of inmates who were not experiencing a medical emergency. Lastly, Demeo states that NCDC "has an agreement with the physicians at the Pahrump Medical Center to provide both emergency and non-emergency medical care to inmates in the custody of NCSO."[39]

In her response, McQueen argues that Demeo failed to disclose any of NCDC's or NCSO's agreements, policies, regulations, or customs related to the medical care of detainees. He provided no indication in his Rule 26 initial disclosures that he would rely on written NDOC policies for his defense. Yet, he uses the existence of those policies (as stated under penalty of perjury in his declaration) as a defense to McQueen's claim. Because Demeo did not (but should have) disclosed the existence of these policies in his initial disclosures, McQueen argues that he may not use that information in support of his motion, as a sanction under Rule 37(c)(1). Demeo responds that McQueen never requested production of the policies, and because she is the party who must prove that Demeo advanced unconstitutional policies, she was responsible for obtaining them through regular methods of discovery.

Demeo's initial disclosures listed Demeo as a witness "expected to testify regarding the facts and circumstances surrounding the claims and defenses asserted in this action."[40] He also listed a "Personal Most Knowledge – Nye County Sheriff's Office Detention" as a witness "expected to testify about the policies, regulations, rules, training, and practices of Nye County

---

[38] *Id.* at 142.

[39] *Id.* at 142–43.

[40] ECF No. 36 at 13.

Sheriff's Office Detention."[41] He did not list any documents that may pertain to NDOC's medical care policies. At the February 22, 2018 hearing, Demeo confirmed that written policies exist, and that Demeo was relying on those policies when making the statements in his declaration.

Demeo did not comply with Rule 26(a)(1)(A)(ii) when he failed to either provide or describe those written policies in his initial disclosures. So I do not consider Demeo's declaration regarding those policies under Rule 37. Without Demeo's declaration, he cannot carry his burden to show that NCDC's medical policies do not amount to deliberate indifference. McQueen contends that because Demeo does not present evidence of constitutional policies, summary judgment should be granted in her favor. But McQueen has not presented any evidence that the unproduced written policies are unconstitutional, and therefore she cannot prevail on summary judgment either. Allowing this claim to go to trial given the state of discovery would be unproductive, as it seems neither side has evidence on this point to present to a jury.

In the interests of justice and in fairness to both of the parties, I will reopen discovery for a limited purpose. Demeo is directed to produce the written policies, regulations, or procedures he relied on in forming his declaration, as well as any other written policies, regulations, or procedures related to medical care of detainees at NCDC and NCSO. McQueen will have a limited amount of time to conduct any follow-up discovery that stems from those written policies. I deny Demeo's summary judgment motion on this claim without prejudice to refile after the close of limited discovery.

## 2. Search Warrant Affidavits and Rule 26

Sgt. Thomassian and Detective Eiserloffel move for summary judgment as to both searches, arguing their actions were constitutional and alternatively that they are entitled to qualified immunity. However, they did not attach the sealed affidavits that supported the search warrants that (presumably) explain why the officers believed they had probable cause to search McQueen's unit. McQueen argues that the defendants did not disclose those affidavits and they

---

[41] *Id.* at 14.

therefore cannot rely on them to support their motion.[42] The defendants respond that they are not relying on the affidavits, and their initial disclosures were sufficient. They provided the search warrants (that explicitly reference the sealed affidavits) and other documents that would alert McQueen to the existence of the affidavits. But McQueen's counsel never requested the affidavits or followed court procedures to unseal the documents.

I agree with the defendants. Rule 26(a)(1)(A)(ii) requires the defendants to disclose a description of all documents in their possession that will be used to support their defenses. In their initial disclosures the defendants listed "criminal investigations and reports from Nye County District Attorney's Office NYE (McQueen) 00001-[000340]."[43] As part of that disclosure they produced the search warrants and some related documents.[44] They are not relying on the affidavits underlying the search warrants. McQueen should have requested further production of the affidavits if she determined that she needed them.

### 3. Probable Cause for Both Warrants

McQueen argues that both search warrants lack probable cause. Search warrants are reviewed deferentially and should be upheld "if the issuing judge had a substantial basis for concluding that probable cause existed based on the totality of circumstances."[45] "Thus, a judge's determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous."[46] "There is a 'presumption of validity' with respect to the affidavit supporting a warrant."[47] That presumption can be overcome "if the party challenging the

---

[42] McQueen also raises a host of arguments claiming that the warrants are invalid because of various state law deficiencies. No state law claims were raised in the complaint, so I do not consider those arguments.

[43] ECF No. 36 at 14.

[44] ECF No. 35 at 9.

[45] *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (2009) (internal quotations and citations omitted).

[46] *Id.* (internal quotations and citations omitted).

[47] *Forster v. County of Santa Barbara*, 896 F.2d 1146, 1148 (1990) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

affidavit makes allegations of deliberate falsehood or reckless disregard for the truth, and those allegations are accompanied by an offer of proof."[48]

Even without the benefit of reviewing the affidavits, at this stage I must give them the presumption of validity to which they are entitled. McQueen failed to request the affidavits and related evidence through discovery. She has not and cannot provide evidence to rebut the presumption of validity, and therefore cannot prove the elements of her probable cause claims.

### 4. May 20, 2013 Warrant

McQueen also argues that the May 20, 2013 search warrant is invalid on its face. Warrants must "particularly describe the things to be seized, as well as the place to be searched."[49] To the extent that McQueen is challenging the search warrant's description of the place to be searched, the May 20, 2013 warrant contained sufficient detail to be held valid. It described Unit A ("a white two story family residence that is mostly surrounded by a brick fence") and Unit C ("a trailer and a guest house to the rear of the property"). It stated that many of the buildings on the property may be concealing the items to be seized. Further, even if Unit A had not been adequately described, "a search warrant for a residence may include all other buildings and other objects within the curtilage of that residence, even if not specifically referenced in the search warrant."[50] All of the units searched were on the same property and fall into the curtilage of Unit C. So I grant summary judgment in favor of Sgt. Thomassian on this claim.

### 5. March 11, 2015 Warrant

McQueen argues that the March 11, 2015 warrant is invalid on its face because it is overbroad. A search warrant must be specific both in its "particularity and breadth."[51] "Particularity is the requirement that the warrant must clearly state what it sought. Breadth deals

---

[48] *Id.*

[49] *Bill v. Brewer*, 799 F.3d 1295, 1300 (9th Cir. 2015).

[50] *U.S. v. Cannon*, 264 F.3d 875, 881 (9th Cir. 2001).

[51] *U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9h Cir. 2009).

with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."[52] When determining whether a warrant's description is sufficiently specific to meet these Fourth Amendment requirements, I consider the following questions:

> (1) Whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.[53]

McQueen contends that the warrant is overbroad because it is almost identical to the warrants issued for the suspects' properties, although McQueen herself was not a suspect. There is no evidence to support that contention. The warrant issued for Lake's residence was much more specific and tailored to seizing Lake's property, as opposed to someone else's.[54] The other warrants attached in support of McQueen's position are for different locations, and there is no evidence of who those other residences belong to, so I am not sure how they are relevant. Regardless, that some search warrants stemming from the same investigation are similar does not demonstrate that the warrant for McQueen's residence lacks specificity. The warrant acknowledges that McQueen is not a suspect by allowing seizure of many items not identifiable as belonging to McQueen. It is not overbroad to search for someone else's property at a specific location after receiving information that a suspect may have stored information and property at that location. And there is no evidence raising a genuine dispute that the seizure of McQueen's personal computers was supported by probable cause.[55] So I grant summary judgment in favor of Detective Eiserloffel on this claim.

---

[52] *Id.*

[53] *U.S. v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

[54] *See* ECF No. 33 at 35–36 (search warrant for Lake's residence).

[55] McQueen also appears to contend that because officers seized medications that were not listed as things to be seized in the March 11, 2015 warrant, the entire warrant is invalid because the search was overbroad and therefore resulted in an invasion of privacy. There is evidence that two prescription pill bottles issued to individuals other than McQueen and Lake were seized during the execution of that warrant. *See* ECF No. 28 at 140 (seized item list). But McQueen provides no supporting authority to demonstrate why an overbroad seizure would render the entire warrant invalid. At the February 22, 2018

## III. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 28) is GRANTED in part and DENIED in part.** The motion for summary judgment on McQueen's medical care claim against Demeo is DENIED without prejudice. Demeo may file a new motion for summary judgment on this issue by the new dispositive motion deadline detailed below. Judgment is GRANTED in favor of defendants Eiserloffel, Scott, and Thomassian on the rest of McQueen's claims.

IT IS FURTHER ORDERED that Demeo shall produce all written policies pertaining to NCDC's and NCSO's medical care of detainees within 15 days of entry of this order. Upon receipt of those policies, discovery will remain open for 30 days, during which McQueen may conduct follow-up discovery related to those policies. The deadline for dispositive motions is now 30 days after this limited discovery period closes. If the parties file new motions for summary judgment, they will be dealt with in their normal course. If the parties do not, then they must file a proposed joint pretrial order within 30 days after discovery closes.

DATED this 26th day of February, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

hearing, McQueen could not identify authority to support this contention, and noted that this issue was collateral to the missing affidavit situation. So I do not consider it here.